## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JOSE L. GARCIA,**

    **Plaintiff,**

**vs.**

                            **CASE NO.:**

**LONESTAR IT SOLUTIONS,**
**LLC, d/b/a Tenant Background**
**Search and TRANSUNION**
**RENTAL SCREENING**
**SOLUTIONS, INC.,**

    **Defendants.**              **/**

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, JOSE LUIS GARCIA, by and through his
undersigned Counsel, alleges the following against Defendants
LONESTAR IT SOLUTIONS, LLC., doing business as Tenant Background
Search and TRANSUNION RENTAL SCREENING SOLUTIONS, INC.

## PRELIMINARY STATEMENT

1.     This is an action for actual, statutory, and punitive damages,
costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act
("FCRA") 15 U.S.C. §§ 1681a–x and the common law tort of defamation.

2.    The FCRA requires that companies like the Defendants—which sell employment and/or background check reports that have a serious and decisive impact on the ability of consumers to obtain employment and/or housing opportunities—follow reasonable procedures to assure the maximum possible accuracy of the information they report. Congress described these obligations placed on consumer reporting agencies as "grave responsibilities." 15 U.S.C. § 1681.

3.    Defendants failed to treat these obligations accordingly, and despite knowing that their underlying data and the matching algorithms that selected records for inclusion into consumer reports had serious deficiencies, they continued to sell reports anyway to the detriment of consumers like the Plaintiff.

4.    This case arises because the Defendants routinely violate the accuracy requirement of the FCRA by reporting, as belonging to Plaintiff, criminal-record information about a different consumer that has the same name. The criminal-record information, however, does not belong to Plaintiff.

5.    Such misreporting, which results from the failure to use reasonable procedures designed to ensure the information Defendants

report is as accurate as possible, results in a violation of the FCRA's accuracy requirement.

6.    Consumer reporting agencies ("CRAs") such as the Defendants that create consumer reports are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. Defendants' practices harm consumers seeking housing by prejudicing prospective landlords with inaccurate adverse information.

7.    Plaintiff brings claims under § 1681e(b) against the Defendants because they reported a criminal record about Plaintiff that did not belong to Plaintiff.

8.    The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).  This is particularly true as to how the CRA Defendants have complied with their now 50-year-old obligation to conduct a meaningful accuracy investigation. The Defendants have been repeatedly sued by consumers, sanctioned by regulators and reprimanded by both District and Appellate courts to do more than an automated parroting of what their customer-creditors instruct.

Had they followed that advice and heeded those warnings, the Plaintiff would not have been harmed.

9.    To further protect consumers, the FCRA makes it presumptively illegal for a consumer reporting agency or reseller, such as LoneStar,  to furnish a report in the employment context.  A consumer reporting agency or reseller may issue such a report "only if" it first obtains from the person to whom it plans to issue the report a certification that it has provided the consumer with a disclosure, obtained the consumer's written authorization and if applicable, will provide the consumer with pre-adverse action notice.

10.    The FCRA also requires that a consumer reporting agency or re-seller reporting negative public record information likely to adversely affect a consumer's ability to obtain employment, must provide the consumer with contemporaneous notice of the information it is reporting and to whom it is reporting it.

11.    Additionally, certain FCRA provisions specifically apply only to resellers. For instance, a reseller is required to disclose the end-user of the consumer report (or information in the report) to the consumer reporting agency from whom it procures the report (or information).

12.     Combined, these interlocking measures are intended to protect consumer privacy by restricting the use of consumer reports to permissible purposes, and implement safeguards to ensure the information being reported is accurate and dissemination of consumer reports is limited.

## JURISDICTION AND VENUE

13.    The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p and 28U.S.C. § 1331.

14.    Venue is proper in this District and Division because the violations described in this Complaint occurred in this District, and each of the Defendants transact business within this District and Division.

## PARTIES

15.    Plaintiff Jose Luis Garcia is a natural person and a resident of the State of Florida.  He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

16.    Defendant LoneStar IT Solutions, LLC ("LONESTAR ") is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) or a reseller as defined in 15 U.S.C. § 1681a(u) and it disburses consumer reports to third parties for monetary compensation. It regularly conducts business in the State of Florida in its own name and as "Tenant Background Search." LoneStar   maintains a principal place of business in the State of Texas.

17.    TURSS, LLC. is a consumer-reporting agency as defined at 15 U.S.C. § 1681a(f).   It maintains an extensive database of public records regarding consumers. It then sells consumer reports generated from the database and furnishes these consumer reports to Defendant, LoneStar IT Solutions LLC doing business as Tenant Background Search, who then sells them to its customers to use for employment and rental decisions. These reports include the prospective applicant's criminal history, among other categories of sensitive, personal information.

## FACTUAL ALLEGATIONS

### *Section 1681e(b) of The Fair Credit Reporting Act Requires Substantive Investigations*

18.    "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to ensure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of

inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

19.    "Section 1681e(b) sets forth the CRAs' overall du[t]y:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke*, 2011 WL 1085874, at *4.

20.    As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 F.3d 426, 430 (4th Cir. 2004).

21.    Further, as the CRA Defendants are aware, courts have held that even though the term "investigation" is not used in § 1681e(b), it is clear that Defendants have a duty to conduct a reasonable initial investigation

pursuant to § 1681e(b) and that this is "central" to the CRAs' duties of care

under that portion of the Act:

> This conclusion flows from the plain meaning of both [§ 1681e(b) and § 1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

> 22.    It has long been the law – since 1970 in fact – that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

### *Defendants Failed to Accurately Report Consumer Information*

23.    In October, 2021, Plaintiff applied for employment with Realty Capital Partners, LLC, in Tampa, Florida.

24.    As part of the application process, Plaintiff was required to undergo a background check.

25.    Plaintiff was not provided a compliant FCRA disclosure by the prospective employer.

26.    Plaintiff's prospective employer ordered Plaintiff's background report from LoneStar in or around late October/early November, 2021.

27.    When LoneStar received the request for the consumer report from Realty Capital Partners, it procured Plaintiff's background report from Defendant TURSS.

28.    Through investigation, Plaintiff was able to determine that TURSS had provided a report to Defendant LoneStar. This report indicated

---

[1] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

that Plaintiff was a sex offender from Nevada based on prior convictions for "attempted sexual assault," and presently residing in El Paso, Texas. The report also attributed a guilty plea to careless driving to Plaintiff that allegedly occurred in March, 2021, in Pennsylvania.

29.    All of this information was false. Plaintiff is not nor has he ever been a registered sex offender.  Plaintiff has never resided and has never even visited Nevada, Texas or Pennsylvania nor has he ever been convicted of any crimes or pled guilty to careless driving.

30.    The Defendants' publication of reports and public record information which were ultimately transmitted to Realty Capital Partners would not have occurred but for the failure of Defendants to follow reasonable procedures to ensure the maximum possible accuracy of the information in Plaintiff's consumer report as required by 15 U.S.C. § 1681e(b).

31.    Not surprisingly, the employer denied Plaintiff employment based on the contents of the report Defendants provided the employer.

32.    The inaccurate report caused Plaintiff substantial hardship, and Plaintiff suffered financial loss, humiliation, loss of sleep, anxiety, and embarrassment caused by Defendants' violations of the law.

33.    Specifically, Plaintiff was denied employment, concerned about being reported as a sex offender and worried about how many other times he had been falsely portrayed to third parties as a sex offender.

34.    CRAs, such as Defendants, deal in volume and use standardized procedures to gather information and attribute it to individuals. They therefore use processes designed to be cost-effective rather than accurate, because ensuring accuracy often costs Defendants additional money.

35.    Defendants failed to follow reasonable procedures to assure the maximum possible accuracy regarding the information it sold about the Plaintiff.

36.    Defendants failed to use the available identifying information to match the records of sex offender "Jose *Antonio* Garcia" to Plaintiff, Jose *Luis* Garcia. Defendants mixed the files of Plaintiff and another "Jose Garcia" failing to match the full middle name and full date of birth. In addition, the criminal record that was reported within Plaintiff's background report was regarding an individual with criminal records in Nevada and Pennsylvania, two states Plaintiff has never even visited. Plaintiff has no connections to any of the criminal information Defendants reported.  In fact, Plaintiff has no criminal record.

37.    LoneStar's standard practice is to use only partial matching and not full identifying information in the preparation of a consumer's report.

38.    Lonestar did not require a match to Plaintiff's full identifying information such as the Plaintiff's full first, middle, and last name; full street address, year of birth, social security number or any generational designation prior to preparing the report regarding Plaintiff.

39.    TURSS fared no better, as it provided to LoneStar a consumer report inaccurately linking the sex-offender records and criminal history of a different Jose Garcia to Plaintiff. Because Section 1681e(b) applies to each separate communication of this information, both Defendants were independently responsible to use reasonable procedures designed to ensure the maximum possible accuracy of the information they were reporting about Plaintiff.

40.    Defendants do not use a reasonable number of identifiers that would prevent the information belonging to one consumer from appearing in another consumer's background report.

41.    Defendants' reporting of the inaccurate information concerning Plaintiff was not accidental nor a result of simple negligence but instead a result of deliberate disregard and flawed policies and procedures.

42.    Plaintiff was denied employment without receiving notice and a copy of his report from the prospective employer.

### *Plaintiff Suffered Actual Harm from the Inaccurate Reporting*

43.    As a result of Defendants' reporting of the inaccurate information about Plaintiff he has suffered damages, including, but not limited to:

    a.  Stress associated with the loss of employment;

    b.  Loss of time attempting to cure the error;

    c.  Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life from being labeled a sex offender and being denied employment.

    d.  Stress associated with attempting to resolve this matter in the last year.

### *Plaintiff's Privacy Rights Were Violated as He Was Deprived of the Inaccurate Information Being Reported About Him by Defendants*

44.    The FCRA also makes it presumptively illegal for a consumer reporting agency or reseller like LoneStar to furnish a report in the employment context.  A consumer reporting agency or reseller may issue such a report "only if" it first obtains from the person to whom it plans to issue the report a certification that it has provided the consumer with a

disclosure, obtained the consumer's written authorization and if applicable, will provide the consumer with pre-adverse action notice.

> (b) **Conditions for Furnishing and Using Consumer Reports for Employment Purposes**
>
> > (1) *Certification from user.* A consumer reporting agency may furnish a consumer report for employment purposes only if
> >
> > > (A) the person who obtains such report from the agency certifies to the agency that
> > >
> > > > (i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable…

15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii).

45.    These requirements must be met as to *each report* a re-seller issues blanket or prospective certifications of compliance by the users of reports are not permitted. That means that for *every report* a LoneStar employer-client procured from LoneStar IT, the recipient must make the requisite certifications to LoneStar IT. *Id.*

46.    LoneStar furnished consumer reports to its employer-clients without first obtaining certification that the consumer had been provided a

lawful disclosure, had authorized in writing the procurement of the consumer report, and certification the employer would provide pre-adverse action notice when applicable. Because LoneStar failed to obtain this certification, Plaintiff was not provided a compliant disclosure and never received pre-adverse action notice or a copy of his consumer report.

47.     When LoneStar procured Plaintiff's consumer report from TURSS, LoneStar failed to disclose Realty Capital Partners was the end-user of the consumer report. Subsequently, when Plaintiff requested his full file disclosure from TURSS, there was no record of his report having been released to either LoneStar or Realty Capital Partners.

48.     The FCRA also requires that a re-seller reporting negative public record information likely to adversely affect a consumer's ability to obtain employment, must provide the consumer with contemporaneous notice of the information it is reporting and to whom it is reporting it.

49.     LoneStar violated 15 U.S.C. § 1681k(a)(1) when it failed to provide Plaintiff with contemporaneous notice when it furnished Plaintiff's consumer report information to Realty Capital Partners. The information LoneStar furnished – a conviction for sexual assault – fits the bill of "negative information" likely to have an adverse effect on employment. However,

LoneStar never notified Plaintiff that it was reporting the negative information about him or reporting such information to Realty Capital Partners.

50.    LoneStar also violated 15 U.S.C. § 1681k(a)(2) because it did not maintain strict procedures to ensure the public record information it reports is complete and up to date. LoneStar  simply relied upon its vendor, TURSS, to maintain such procedures, which TURSS clearly failed to maintain.

51.    Additionally, certain FCRA provisions specifically apply only to resellers. For instance, a reseller is required to disclose the end-user of the consumer report (or information in the report) to the consumer reporting agency from whom it procures the report (or information).  And, a reseller must maintain reasonable procedures to ensure the reports it resells are only used for a permissible purpose as defined by the Act.

> (e) Procurement of Consumer Report for Resale
> > (1) *Disclosure.* A person may not procure a consumer report for purposes of reselling the report (or any information in the report) unless the person discloses to the consumer reporting agency that originally furnishes the report
> >
> > (A) the identity of the end-user of the report (or information) and

(B) each permissible purpose under section 604 [§ 1681b] for which the report is furnished to the end user of the report (or information).

(2) *Responsibilities of procurers for resale.* A person who procures a consumer report for purposes of reselling the report (or any information in the report) shall

(A) establish and comply with reasonable procedures designed to ensure that the report (or information) is resold by the person only for a purpose for which the report may be furnished under section 604 [§ 1681b], including by requiring that each person to which the report (or information) is resold and that resells or provides the report (or information) to any other person

(i) identifies each end user of the resold report (or information);

(ii) certifies each purpose for which the report (or information) will be used; and

(iii) certifies that the report (or information) will be used for no other purpose; and

(B) before reselling the report, make reasonable efforts to verify the identifications and certifications made under subparagraph (A).

15 U.S.C. §§ 1681e(e)(1), (2).

52.    LoneStar  IT did not disclose the end-user of its consumer reports to TURSS.  As a result, when Plaintiff requested his full file

disclosure from TURSS, there was no indication his consumer report had ever been furnished to LoneStar IT or Realty Capital Partners.

### *LoneStar's Violations Were Willful*

53.    The FCRA allows for a remedy for a "willful" violation.  A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007).  A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

54.    Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

55.    As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years.  The language of § 1681e(b) has not changed.  The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

### *LoneStar Failed to Abide by the FCRA's Reseller Requirements*

56.    The FCRA imposes the same requirements on re-sellers as it does consumer reporting agencies.

57.    The FCRA also makes it presumptively illegal for a consumer reporting agency or reseller like LoneStar to furnish a report in the employment context.  A consumer reporting agency or reseller may issue such a report "only if" it first obtains from the person to whom it plans to issue the report a certification that it has provided the consumer with a disclosure, obtained the consumer's written authorization and if applicable, will provide the consumer with pre-adverse action notice.

58.    The FCRA also makes it presumptively illegal for a consumer reporting agency or reseller like LoneStar to furnish a report in the employment context.  A consumer reporting agency or reseller may issue such a report "only if" it first obtains from the person to whom it plans to issue the report a certification that it has provided the consumer with a disclosure, obtained the consumer's written authorization and if applicable, will provide the consumer with pre-adverse action notice.

(b) **Conditions for Furnishing and Using Consumer Reports for Employment Purposes**

(1) *Certification from user.* A consumer reporting agency may furnish a consumer report for employment purposes only if

(A) the person who obtains such report from the agency certifies to the agency that

(i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable…

15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii).

59.    These requirements must be met as to *each report* a re-seller issues; blanket or prospective certifications of compliance by the users of reports are not permitted. That means that for *every report* that a LoneStar employer-client procured from LoneStar, the recipient must make the requisite certifications to LoneStar  IT. *Id.*

60.    LoneStar furnished consumer reports to its employer-clients without first obtaining certification that the consumer had been provided a lawful disclosure, had authorized in writing the procurement of the consumer report, and would provide pre-adverse action notice when applicable.

61.    The FCRA also requires that a re-seller reporting negative public record information likely to adversely affect a consumer's ability to obtain employment, must provide the consumer with contemporaneous notice of the information it is reporting and to whom it is reporting it.

62.    LoneStar violated 15 U.S.C. § 1681k(a)(1) when it failed to provide Plaintiff with contemporaneous notice when it furnished Plaintiff's consumer report information to Realty Capital Partners. The information LoneStar IT furnished was likely to have an adverse effect upon Plaintiff's ability to obtain employment. However, LoneStar never notified Plaintiff that it was reporting the negative information about him, or reporting such information to Realty Capital Partners.

63.    LoneStar also violated 15 U.S.C. § 1681k(a)(2) because it did not maintain strict procedures to ensure the public record information it reports is complete and up to date. LoneStar simply relied upon its vendor, TURSS, to maintain such procedures.

64.    Additionally, certain FCRA provisions specifically apply only to resellers. For instance, a reseller is required to disclose the end-user of the consumer report (or information in the report) to the consumer reporting agency from whom it procures the report (or information).

**(e) Procurement of Consumer Report for Resale**

(1) *Disclosure.* A person may not procure a consumer report for purposes of reselling the report (or any information in the report) unless the person discloses to the consumer reporting agency that originally furnishes the report

(A) the identity of the end-user of the report (or information) and

(B) each permissible purpose under section 604 [§ 1681b] for which the report is furnished to the end user of the report (or information).

(2) *Responsibilities of procurers for resale.* A person who procures a consumer report for purposes of reselling the report (or any information in the report) shall

(A) establish and comply with reasonable procedures designed to ensure that the report (or information) is resold by the person only for a purpose for which the report may be furnished under section 604 [§ 1681b], including by requiring that each person to which the report (or information) is resold and that resells or provides the report (or information) to any other person

(i) identifies each end user of the resold report (or information);

(ii) certifies each purpose for which the report (or information) will be used; and

(iii) certifies that the report (or information) will be used for no other purpose; and

(B) before reselling the report, make reasonable efforts to
verify the identifications and certifications made under
subparagraph (A).

15 U.S.C. §§ 1681e(e)(1), (2).

65.   LoneStar procured (or caused to be procured) Plaintiff's
consumer report (or consumer report information) from TURSS for the
purpose of resale but failed to disclose the identity of the end-user to TURSS.

### *LoneStar failed to make adequate disclosures to consumers*

66.   Congress has deemed it important that consumers have full
access to all of the information contained in their consumer report files.
Thus, it enacted 15 U.S.C. § 1681g, which reads in pertinent part:

**(g)     Disclosures to Consumers**

(a). *Information on File; sources; report recipients*. Every consumer
reporting agency shall, upon request, clearly and accurately
disclose to the consumer:
   (1) All information in the consumer's file at the time of the
   request . . .
   (2)  The sources of the information . . .
   (3) (A) Identification of each end-user  . . . that procured a
   consumer report
         (i) for employment purposes, during the 2-year period
         preceding the date on which the request is made; or
         (ii) for any other purpose, during the 1-year period
         preceding    the date on which the request is made;
   (B)  An identification of a person under subparagraph (A) shall
   include:

(i) the name of the person or, if applicable, the trade name (written in full) under which such person conducts business; and
(ii) upon request of the consumer, the address and telephone   number of the person.

15 U.S.C. § 1681g (a)(2)(3)(A),(B)

67.    Plaintiff requested LoneStar disclose to him the full contents of his consumer report and identify the end users that had procured it.

68.    LoneStar did not fulfill its statutory obligation to Plaintiff. Instead, LONESTAR provided Plaintiff a different version of his consumer report that did not indicate he was a sex offender or that his report had been procured by Realty Capital Partners or provided to Realty Capital Partners.

## COUNT ONE – VIOLATION OF FAIR CREDIT REPORT ACT
### 15 U.S.C. § 1681e(b)
### (Plaintiff, Individually)

69.    Plaintiff realleges and incorporates paragraphs 23-43 above as if fully set out herein.

70.    Defendants LoneStar and TURSS failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained in the consumer report that each sold regarding the Plaintiff.

71.    Defendants used flawed matching methodology and failed to consider the complete set of identifying information at their disposal when linking the sex-offender Jose Garcia's records with Plaintiff Jose Garcia.

72.    As a result of LoneStar and TURSS's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to:  the loss of his ability to obtain housing, loss of sleep, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

73.    The Plaintiff is entitled to recover actual damages, costs, and attorneys' fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

74.    Because Defendants' conduct was also willful, Plaintiff is entitled to uncapped punitive damages in addition to the amounts above. 15 U.S.C. § 1681n

## COUNT TWO – DEFAMATION
**(Plaintiff, Individually)**

75.    Plaintiff realleges and incorporates paragraphs 23-43, above as if fully set out herein. Plaintiff asserts this claim in the alternative to his FCRA claims, to the extent the Defendants may argue that the FCRA does not apply to them.

76.     Within the context of the foregoing allegations, Defendants each made multiple false and defamatory statements regarding the Plaintiff. TURSS first published that Plaintiff was a sex offender to LoneStar.  LoneStar then published that same statement to Plaintiff's potential employer.

77.     In each statement, the Defendants identified Plaintiff by name. Each statement was also false, as Plaintiff is not a sex offender and had no traffic offenses.

78.     Labeling Plaintiff a sex offender was defamatory because such a label tends to lower one's reputation within the community or expose one to ridicule.

79.     Defendants intended to publish the statements, and the statements were false.

80.     Defendants each published the statements knowing they were false or acting in reckless disregard for the truth or falsity of the statements.

81.     As a result of Defendants' conduct, actions and inactions, the Plaintiff suffered various types of damages as set forth herein, including specifically the loss of the ability to obtain employment, mental and emotional pain, anguish, humiliation and embarrassment of being inaccurately labeled a sex offender, and damage to his reputation.

82.     This defamation was malicious, willful, deliberate, intentional and/or with reckless disregard for the interests and rights of the Plaintiff, so as to justify an award of punitive damages against the Defendants, LoneStar IT and TURSS in an amount to be determined by the Court.

## CLASS ACTION ALLEGATIONS

83.     Pursuant to Rule 23 Fed.R.Civ.P. and the FCRA, Plaintiff brings this action for himself and on behalf of the following putative classes.

84.     In Count III, Plaintiff asserts a FCRA claim under 15 U.S.C. §§ 1681e(e)(1)(A) and 15 U.S.C. §§ 1681e(e)(2)(A),(B) against LoneStar on behalf of a "1681e(e)" Class defined as:

> **All consumers who were subject of a consumer report (or any information in the report) that was procured (or caused to be procured) by LONESTAR IT SOLUTIONS LLC for resale without disclosing the identity of the end-user of the report to the consumer reporting agency or maintaining reasonable procedures to identify each end user or obtain from each end user the requisite certifications, within five years of the filing of this lawsuit through the date of final judgment in this action.**

85.     In Count IV, In Count VII, Plaintiff asserts a FCRA claim under 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii) against LONESTAR IT on behalf of a "No Certification" Class defined as:

> **All employees and job applicants in the United States who were the subject of a consumer report furnished by**

> **LONESTAR IT SOLUTIONS LLC without the user's certification of compliance with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3), within five years of the filing of this lawsuit through the date of final judgment in this action.**

86.    In Count V, Plaintiff brings a separate claim against LoneStar under § 1681k, for a "1681k Notice" Class defined as:

> **All consumers in the United States who were the subject of a consumer report (or consumer report information) furnished by LONESTAR IT SOLUTIONS LLC that included criminal history entries of the grade of misdemeanor or higher, within five years of the filing of this lawsuit through the date of final judgment in this action.**

87.    Count VI, Plaintiff asserts a claim against LoneStar under § 1681g(2),(3)(A)-(B) on behalf of a "Disclosure Failure Class" defined as:

> **All consumers in the United States who were the subject of a consumer report (or consumer report information) furnished by LONESTAR IT SOLUTIONS LLC but to whom LONESTAR IT SOLUTIONS LLC failed to disclose sources of information for the consumer report or the identification of each person that procured their consumer report within five years of this lawsuit through the date of final judgment in this action.**

88.    <u>Numerosity</u>: The members of the putative LoneStar classes are so numerous that a joinder of all Class members is impracticable. Plaintiff is informed that all of the LoneStar putative classes have hundreds, if not

thousands of members.

89.  Typicality: Plaintiff's claims are typical of those of the members of the putative LoneStar procured (or caused to be procured) all of their consumer reports under the same processes and procedures, re-sold their information to third parties in the same manner, and systemically failed to provide class members notice when reporting information about them. The FCRA injuries suffered by Plaintiff are typical of those suffered by other members of the putative classes. Additionally, the damages Plaintiff is seeking to recover are typical of the damages Plaintiff is seeking on behalf of the putative classes.

90.  Adequacy: Plaintiff is a member of and will fairly and adequately protect the interests of the putative classes, and has retained counsel experienced in FCRA class action litigation.

91.  Commonality: Common questions of law and fact exist as to all members of the putative classes, and predominate over any questions solely affecting individual members of the putative classes. These common questions include, but are not limited to:

a.  whether LoneStar failed to identify the end-user of consumer report information to the consumer reporting

agency from whom it procured consumer report information for resale;

b.      whether LoneStar failed to obtain certification from the user as to each purpose for which the report (or information) will be used;

c.      whether LoneStar failed maintain strict procedures designed to ensure the accuracy of any negative public record information being reported for employment purposes is complete and up to date;

d.      whether LoneStar failed to provide contemporaneous notice to consumers when reporting public record information likely to have an adverse effect on the consumer's ability to obtain employment and the person to whom it was reporting such information

e.      whether LoneStar failed to obtain certifications of compliance with the FCRA's pre-adverse action requirement, when applicable, from end users before furnishing consumer reports;

f.      whether LoneStar failed to obtain certifications of

compliance with the FCRA's disclosure and authorization requirements from end users before furnishing consumer reports for employment purposes;

g.     whether LoneStar failed to disclose to consumers all information in the consumer's file at the time of the request, including the sources of information and identities of end-users that procured the consumer report;

h.     whether LoneStar's FCRA violations were willful;

i.     the proper measure of statutory damages and attorneys' fees.

92.    This case is maintainable as a class action because prosecution of actions by or against individual members of the putative classes  would result in inconsistent or varying adjudications and create the risk of incompatible  standards of conduct for the LoneStar.  Further, adjudication of each individual class member's claim as a separate action would potentially be dispositive of the interest of other  individuals not a party to such action, thereby impeding their ability to protect their interests.

93.    This case is also maintainable as a class action because LoneStar acted or refused to act on grounds that apply generally to the putative

classes.

94.    Class certification is also appropriate because questions of law and fact common to the putative classes predominate over any questions affecting only individual members of the putative classes, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct, which is described herein, stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the putative classes do not have an interest in pursuing separate actions, as the amount of each class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

95.    Plaintiff intends to send notice to all members of the putative classes to the extent required by the Federal Rules of Civil Procedure. The

names and addresses of the putative class members are readily available from Defendants and through records maintained by third parties.

## COUNT III
### Violation of U.S.C. §§ 1681e(e)(1)(A)-(B), (2)(A)
### (against LONESTAR IT SOLUTIONS LLC)

96.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 23-38, 40-68.

97.    LoneStar is a re-seller of consumer reports.

98.    LoneStar obtained consumer reports or consumer report information from a consumer reporting agency for the purpose of resale.

99.    LoneStar obtained consumer reports or consumer report information from a consumer reporting agency without first disclosing the identity of the end-user to the consumer reporting agency.

100.    LoneStar violated the FCRA by failing to provide the identity of the end-user to the consumer reporting agency before re-selling the report or consumer report information.

101.    LoneStar violated the FCRA by failing to obtain certification from the end user the permissible purpose for which the report was being furnished. 15 U.S.C. § 1681e(e)(2)(A)

102.    Plaintiff and other § 1681e(e) members class members were

harmed as their consumer report or consumer report information was disseminated and published without any record of the end-user's identity provided to the consumer reporting agency. 15 U.S.C. § 1681e(e)(1)(A).

103.    Plaintiff and other § 1681e(e) members class members were harmed as their consumer report or consumer report information was resold without any certification of permissible purpose from the end user. 15 U.S.C. § 1681e(e)(2)(A).

104.    The foregoing violations were willful. LoneStar acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other § 1681e(e) class members. LoneStar knew, or should have known, of its legal obligations under the FCRA.  These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission. LoneStar obtained or otherwise had available substantial written materials that apprised LoneStar of its duties under the FCRA. Any reasonable reseller knows of the existence of these FCRA mandates, or can easily discover their substance.

105.    Plaintiff and the § 1681e(e) class members are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these

violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

106.    Plaintiff and the 1681e(e) class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

a.    determining that this action may proceed as a class action;

b.    designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

c.    issuing proper notice to the putative class at LoneStar's expense;

d.    awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

e.    awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT IV
### Violation of 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii)
### (against LONESTAR IT SOLUTIONS LLC)

107.  Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 23-38, 40-68.

108.  LoneStar willfully violated 15 U.S.C. § 1681b(b)(1)(A)(i)-(ii) because it furnished consumer reports about Plaintiff and class members, which were used for employment purposes, without the user's certification of compliance with the disclosure, authorization and notification requirements set forth in 15 U.S.C. §§1681b(b)(2)(i)-(ii) and § 1681b(b)(3)(i)-(ii).

109.  The forgoing violations were willful. At the time LoneStar violated 15 U.S.C. § 1681b(b)(1)(A), LoneStar knew it was required to obtain certification of compliance with 15 U.S.C. § 1681b(b)(2) from the user before furnishing the user with consumer reports for employment purposes and certification with the notification requirements of 15 U.S.C. § 1681b(b)(3), if applicable. LoneStar acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other.

110.  Plaintiff and the LoneStar Certification class members are entitled to statutory damages of not less than one hundred dollars ($100.00)

and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

    a.    determining that this action may proceed as a class action;

    b.    designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

    c.    issuing proper notice to the putative class at LoneStar's expense;

    d.    awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

    e.    awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT V
### Violation of 15 U.S.C. § 1681k(a)(1)

111.  Plaintiff alleges and incorporates by reference the allegations

in the preceding paragraphs 23-38, 40-68.

112.   LoneStar willfully violated 15 U.S.C. § 1681k(a)(1) because it provided consumer reports about Plaintiff and class members, which were used for employment purposes and contained public-record information likely to have an adverse effect on consumers' ability to obtain employment, without providing the subjects of the report contemporaneous notice that it was furnishing the report to the users.

113.   LoneStar cannot rely on the "strict procedures" requirement of Section 1681k(a)(2) because it takes no steps to ensure the public-record information it reports is complete and up to date.

114.   LoneStar simply merges, assembles and evaluates, without verification, the consumer report or consumer report information it obtains from consumer reporting agencies.

115.   Plaintiff and class members suffered informational injury by LoneStar failure to provide them with statutorily required information when such information was due.

116.   The forgoing violations were willful. At the time LoneStar violated 15 U.S.C. § 1681k(a)(1), LoneStar knew it was required to provide contemporaneous notice of its furnishing of reports but has no process in

place to meet the strict procedures requirement of Section 1681k(a)(2) when it furnishes reports for employment purposes that contain negative public-record information. LoneStar's willful conduct is also reflected by, among other things, the following facts:

  a.  LoneStar knew of potential FCRA liability;

  b.  LoneStar is a company with access to legal advice through its own general counsel's office and outside employment counsel, and there will be no contemporaneous evidence that it determined that its conduct was lawful;

  c.  The FCRA's contemporaneous notice requirement is clearly spelled out in the plain language of the statute;

  d.  LoneStar knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

  a.  determining that this action may proceed as a class action;

  b.  designating Plaintiff as class representative and

designating Plaintiff's counsel as counsel for the putative class;

c.     issuing proper notice to the putative class at LoneStar's expense;

d.     awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

e.     awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT VI
### (Violation of 15 U.S.C. § 1681g(2), (3)(A), (B))

117.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 23-38, 40-68.

118.   LoneStar is a re-seller of consumer reports.

119.   LoneStar failed, upon the consumer's request, to disclose all of the information in the consumer's file at the time of the request;

120.   LoneStar failed, upon the consumer's request, to disclose the source information for the consumer's consumer report;

121.   LoneStar failed, upon the consumer's request, to disclose the identities of the end-users that had procured the consumer's consumer report.

122.   The forgoing violations were willful. At the time LoneStar violated 15 U.S.C. § 1681g(2), (3)(A), (B), LoneStar knew it was required to disclose all of the information in a consumer's file, including the source information and the identities of any persons that had procured the consumer's report:

    a.    LoneStar knew of potential FCRA liability;

    b.    LoneStar is a company with access to legal advice through its own general counsel's office and outside employment counsel, and there will be no contemporaneous evidence that it determined that its conduct was lawful;

    c.    LoneStar knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

a.     determining that this action may proceed as a class action;

b.     designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

c.     issuing proper notice to the putative class at LoneStar expense;

d.     awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

e.     awarding reasonable attorneys' fees and costs as provided by the FCRA.

## JURY DEMAND

123.   Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Dated this 10th, day of April 2023.

Respectfully submitted,
**/s/ *Marc R. Edelman***
**MARC R. EDELMAN, ESQ.**
Fla. Bar No. 0096342
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, FL 33602

Telephone:  813-223-5505
Fax:  813-257-0572
MEdelman@forthepeople.com